UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MELODY LOVE SMITH,

      Plaintiff,

v.                                         Case No. 18-C-1403

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

## DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Melody Smith filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits and a period of disability as well as supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Smith contends that the administrative law judge's (ALJ) decision is flawed and requires remand for two reasons: (1) the ALJ erred by failing to give treating physician Dr. John Cotter's opinion controlling weight, and (2) the ALJ failed to adequately consider the impact of Smith's obesity on her ability to work. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

In July of 2014, Smith filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for SSI. R. 13. Smith listed epilepsy, migraines, osteoarthritis, torn cartilage, trigeminal neuralgia, depression, PTSD, and anxiety as the conditions that limited her ability to work. R. 337. After her application was denied initially and on reconsideration, Smith requested a hearing before an ALJ. On June 23, 2017, ALJ Deborah M.

Giesen conducted a video hearing where Smith, who was represented by counsel, and a vocational expert (VE) testified. R. 37–87.

Smith, who is 5'7", was 43 years old and weighed 275 pounds at the time of the hearing. R. 41, 49. She has two associate degrees from a technical college, one in business management and one in marketing, and lives with her boyfriend and 11-year-old son. R. 41, 49. Although Smith testified to working various jobs, the only job the ALJ found relevant from Smith's prior work history was her position stocking items at Walmart. R. 46. At the time, Smith's only source of income was from her participation in a work program. R. 48.

Smith testified that she has bilateral carpal tunnel in both hands, and that she previously had surgery on her left hand and was slated to have surgery on her right. R. 53–54, 62. Smith stated she cannot fully make a fist with her left hand; feels shocks of pain in it; and has difficulty gripping items, opening jar lids, and tying her shoes because of the lack of sensation in her left hand. R. 62. Smith reported that she was in physical therapy to regain mobility in her left hand, but that she still experiences hand pain. R. 53–54. Smith also stated that she has similar limitations with her right hand in that she drops items and is not capable of fine fingering, but is capable of buttoning a shirt and can pinch items with some of her fingers. R. 63–64.

Smith further testified that she had surgery in August of 2016 to remove a synovial cyst in the facet joint on her L5 vertebrae that was compressing her sciatic nerve but still experiences sciatic radiating pain from her hip down to her knee due to permanent nerve damage. R. 69. Smith stated that this pain limits her ability to walk, sit down, and lay down for extended periods of time. R. 70. In addition, Smith reported having difficulty sleeping due to the pain and her PTSD, and that she was generally waking up five to six times a night. *Id.*

Smith testified that she has difficulties raising her arms above shoulder level and that attempts to do so result in neck, shoulder, and upper back pain. R. 66. Smith also testified about the effects of her obesity, stating that she has difficulties standing for more than ten minutes, that it causes pain in her lower spine, and that she is unable to bend or stoop. R. 65. She stated that her limited mobility makes it difficult for her to enter and exit the SUV that she drives. R. 75.

Smith stated that she suffers from migraines and that, if they are not treated with medication, they can last 15 to 16 hours. R. 67. When she is suffering from a migraine, Smith said she turns off all of the lights, avoids noises, and remains as still as possible. *Id.* Smith also testified that she suffers from incontinence and constant constipation and that, as a result, she ends up soiling herself five to six times a day and wears bladder pads. R. 70. Smith further testified that she is seen by a counselor every two weeks and that she suffers from anxiety attacks on a daily basis that render her incapable of doing anything. R. 57, 72.

In addition to the conditions listed in her application, Smith testified that she suffers from severe overactive bladder syndrome, sciatica and nerve damage in her right and left legs, bilateral trigeminal neuralgia, degenerative disc disease, arthritis in both hips, bilateral carpal tunnel, ulnar nerve neuropathy, ganglion cysts in left hand, leg pain due to nerve damage, generalized anxiety disorder, major depressive disorder, PTSD, sleeplessness, memory loss, hyper vigilance, adjustment disorder with anxious mood, adjustment disorder with mixed emotional features, chronic pain, and chronic pain syndrome. Her kneecap is misaligned, and her right leg is an inch and a half shorter than her left. R. 60. Smith also reported difficulties balancing. R. 71.

Smith testified that she has a driver's license and reported that she avoids driving alone during the day and usually rides with a passenger because she often falls asleep at the wheel but

does not have the same problem driving alone at night. R. 53. She has no restrictions on her driver's license due to epilepsy or narcolepsy. R. 52. Regarding self-care, Smith testified that she is able to brush her teeth, but has difficulties showering, bathing, and taking care of herself in the bathroom due to her limited mobility. R. 72, 75–76. Smith stated that she had difficulties caring for her youngest son because she could not pick him up and received assistance from the child's father and other family members to help care for him. R. 76–78. Smith also testified that she is unable to contribute much to housework because of the limitations with her hands. R. 73.

Smith stated that she smokes half a pack to a pack of cigarettes daily and that her attempts to quit were unsuccessful due to adverse reactions to various treatments. R. 50–51. Smith testified that she very rarely drinks and only used illegal drugs during a one-month stay in Colorado in March of 2014 where she smoked marijuana to relieve nerve pain. R. 55. Smith stated she has been prescribed Tegretol for seizures and two medicines, Ketorolac and Toradol, for her migraines. R. 51, 55, 58. As a side effect of the various medications that she takes, Smith testified that she suffers from memory loss and has difficulties remembering what medications she has taken during the course of the day and has lapses when she is driving where she forgets where she is going. R. 68.

In a sixteen-page decision dated July 12, 2017, the ALJ determined that Smith is not disabled. R. 13–28. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 14–15. At step one, the ALJ concluded that Smith has not engaged in substantial gainful activity since her March 28, 2018 alleged onset date and that she met the insured status requirements through December 31, 2014. R. 16. At step two, the ALJ concluded that Smith has the following severe impairments: status post

resection of lumbar synovial facet cyst, degenerative disc disease of cervical spine, degenerative joint disease of right hip with labral tear, obesity, migraine headaches, degenerative joint disease of knees, carpal tunnel syndrome, ulnar neuropathy, depression/adjustment disorder with anxiety, and chronic pain syndrome. *Id.*

As for her claim that she suffered from epilepsy, the ALJ noted that while epilepsy appears in the past medical history of some of the records, Smith had not undergone any treatment for it during the period at issue and had not had any seizures since she was a child. Because there were no medical records that substantiated the condition, the ALJ found it was not a medically determinable impairment. R. 16. The ALJ also found her reported chronic history of episodic urinary incontinence could be accommodated with adult undergarments. R. 17. Plaintiff's claim of PTSD was found to be, like her epilepsy, not a medically determinable impairment, and neither her trigeminal neuralgia, nor her obstructive pulmonary impairment required treatment or evaluation on an ongoing basis. As a result, none of these conditions were found to be severe.

At step three, the ALJ concluded Smith did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17. The ALJ considered listings 1.02(A) (major dysfunction of a joint due to any cause), 1.04 (disorders of the spine), 11.14 (peripheral neuropathies with disorganization of motor function), 12.04 and 12.06 (mental impairments).

The ALJ next assessed Smith's residual functional capacity (RFC) and found that she can perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) subject to the following limitations:

> She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps/stairs, balance, and stoop. She cannot kneel, crouch, or crawl. She is limited to no more than frequent use of her hands for handling, fingering, or feeling. She

5

is limited to simple, routine, and repetitive tasks with occasional contact with supervisors and coworkers. She is limited to no public contact.

R. 19. At step four, the ALJ then concluded, based on the testimony of the VE, that Smith is unable to perform any past relevant work but would be able to perform the following occupations: circuit board assembler, document preparer, and circuit board inspector. R. 26–27. Accordingly, the ALJ found that Smith is not disabled. R. 27. The Appeals Council denied Smith's request for review, making the ALJ's decision the final decision of the Commissioner.

**LEGAL STANDARD**

The question before the court is not whether it agrees with the Commissioner's conclusion that the plaintiff is not disabled. Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court recently reaffirmed that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Beistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

"Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Smith argues that the ALJ committed two errors requiring reversal of the Commissioner's decision: (1) the ALJ failed to build "a logical bridge in denying treating physician, Dr. John Cotter controlling weight;" and (2) the ALJ failed to "comply with SSR 02-01p in not considering the impact of the claimant's obesity on her ability to work." Pl.'s Br. in Supp. of S.J., Dkt. No. 13, at 1–2. Neither argument is well developed in her brief in chief, and she neglected to file a reply to the Commissioner's brief in opposition.

**A. Dr. Cotter**

The ALJ noted that Dr. Cotter opined that Smith could lift/carry 20 pounds, stand/walk no more than two hours, and sit no more than two hours in an 8-hour workday with normal breaks. R. 25 (citing R. 634). In essence, he concluded that she could work no more than four hours a day. Dr. Cotter also opined that Smith could frequently look down, turn her head right or left, look up, or hold her head in a static position, but rarely twist or climb ladders or stairs. He concluded she could also frequently grasp, perform fine finger manipulation, or reach using both hands, but would be absent from work because of her impairments more than three times per month. *Id.* (citing R. 635). Plaintiff claims that the ALJ erred in failing to give Dr. Cotter's opinion controlling weight.

Though the current regulation provides otherwise, under the regulations applicable to Smith's application, the ALJ must give a treating source's medical opinion on the nature and severity of the claimant's impairments "controlling weight" if the opinion "is well-supported by the medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 404.1527(c)(2); SSR 96–2p. At the same time, "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). The Seventh Circuit has cautioned that treating physicians may bring their own biases to the evaluation: "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Id.*

Thus, the ALJ need not blindly accept a treating physician's opinion—she may discount it if it is internally inconsistent or contradicted by other substantial medical evidence in the record. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If an ALJ gives the treating source's medical

8

opinion lesser weight, the ALJ must articulate "good reasons" for doing so. § 404.1527(c)(2). In such a case, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" in determining the weight to give the medical opinion. *Id.*; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

In this case, the ALJ gave "some weight" to Dr. Cotter's opinion, "at least as it relates to the claimant's ability to stand and walk and perform various postural activities (e.g., climbing)," but accorded "little weight" to his opinion that she was limited to only four hours of work per day and would be absent for more than three days per month. R. 25. The ALJ gave good reasons for not treating Dr. Cotter's opinion regarding these matters as controlling. The ALJ first noted that Dr. Cotter did not have the benefit of medical evidence submitted after he gave his opinion. Dr. Cotter signed the questionnaire setting forth the foregoing limitations on October 22, 2015. This was almost ten months before she underwent an L4-5 laminotomy, foraminotomy, and removal of synovial cyst, however, on August 8, 2016. Dr. Cotter did not intend the limitations he noted to be permanent. He expressly noted at the time that Smith had a surgical evaluation pending and his recommendations should be reviewed in six months. R. 636–37. The ALJ discussed the follow-up visits after the surgery, noting that although she reported ongoing pain issues, on examination she was in no acute distress and had full 5/5 strength in her upper and lower extremities. R. 22. The ALJ accommodated the limitations that remained in the RFC she formulated. Additionally, the ALJ noted that Dr. Cotter's opinion that Smith could sit for no more than two hours in an eight-hour day was inconsistent with her involvement in the State's "W2" program, and that there was no evidence supporting the conclusion she would be absent more than three days per month. R. 25. Indeed, Dr.

9

Cotter's opinion that Smith could stand, walk, and sit no more than four hours altogether would have left her essentially bedridden for twenty hours a day. No evidence in the record supports such a severe limitation. Indeed, all of the other medical opinions in the case supported physical restrictions equal to or less than those the ALJ found.

Smith further argues that the ALJ failed to apply the factors enumerated in 20 C.F.R. § 404.1527(c), including the length, nature, and extent of treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. Read as a whole, the ALJ's decision adequately explained why she only partially accepted Dr. Cotter's opinion. An ALJ need not address every regulatory factor in evaluating a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008). Neither the length of treatment nor Dr. Cotter's specialty were pertinent to the reasons the ALJ decided not to give his opinion controlling weight, and the ALJ did not commit legal error in failing to explicitly address them. *See Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor while discussing her decision to reject Dr. Preciado's reports, but she did note the lack of medical evidence supporting Dr. Preciado's opinion, *see* 20 C.F.R. § 404.1527(d)(3) (2009), and its inconsistency with the rest of the record, *see id.* § 404.1527(d)(4). This is enough.").

In sum, the ALJ gave good reasons for giving Dr. Cotter's opinions less than controlling weight. She rightly noted that his conclusory opinions that Smith could work no more than four hours per day and would miss at least three days a month because of her impairments had no support in the record, and the fact that he offered this opinion more than ten months before her surgery, while explicitly noting that his recommendations should be reviewed after six months, was by itself a good

reason to deny his opinion more weight than it was accorded. Smith's first claim of error therefore fails.

**B. Obesity**

Smith next argues that the ALJ failed to reasonably consider the effect of her obesity upon her RFC. This claim also fails. The ALJ noted in her decision that Smith's body mass index (BMI) ranged from 38 to 48 during the relevant period. R. 22. She explicitly referenced Social Security Ruling (SSR) 02-01p, which provides guidance on SSA policy concerning the evaluation of obesity in disability claims under Title II and Title XVI of the Social Security Act. 2002 WL 34686281 at 1. The ALJ then explained: "Consistent with the evaluation suggested in SSR 02-01p, the undersigned has considered the extent to which the claimant's obesity affects her ability to function and perform work-related activities. And, in light of the claimant's obesity and the combination of her impairments, the undersigned has restricted her to a range of sedentary work." R. 22.

Not only did the ALJ consider Smith's obesity explicitly, but she did so implicitly in weighing the various medical opinions offered in the case, since the authors of those opinions were fully aware of Smith's obesity as well. There is no requirement for the ALJ to specify how obesity in particular limited the plaintiff's functional capacity. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803 (7th Cir. 2005) (explaining that the "ALJ must consider the effect of an applicant's obesity in conjunction with her other impairments" in setting RFC). The ALJ restricted Smith to a range of sedentary work, and Smith fails to identify any additional limitations caused by her obesity that the ALJ should have considered. *See Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016) ("Although the issue is close, we find that the ALJ adequately considered Brown's obesity alongside her severe

11

back pain."). Without more, Smith has not explained how the ALJ erred in failing to consider her obesity in formulating an RFC.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this   26th   day of September, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
